# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DERRICK POWELL, | § | No. 310, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 0909000858 |
| STATE OF DELAWARE, | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 7, 2016
Decided: December 15, 2016

Before **STRINE**, Chief Justice, **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon Motion to Vacate Death Sentence. **GRANTED**.

Patrick J. Collins, Esquire (*Argued*), Collins & Associates, Wilmington, Delaware; Natalie S. Woloshin, Esquire, Woloshin, Lynch & Natalie, Wilmington, Delaware, Attorneys for Defendant Below, Appellant.

Elizabeth R. McFarlan, Esquire, John R. Williams, Esquire (*Argued*), Department of Justice, Wilmington, Delaware, Attorneys for Plaintiff Below, Appellee.

Herbert W. Mondros, Esquire, Margolis Edelstein, Wilmington, Delaware; Edson A. Bostic, Esquire, Tiffani D. Hurst, Esquire, Jenny Osborne, Esquire, Office of the Public Defender, Wilmington, Delaware.

Thomas C. Grimm, Esquire, Rodger D. Smith II, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Attorneys for *Amicus Curiae*, Luis G. Cabrera, Jr.

Richard H. Morse, Esquire, Ryan Tack-Hooper, Esquire, American Civil Liberties Union Foundation of Delaware, Wilmington, Delaware; Brian W. Stull, Esquire, Cassandra Stubbs, Esquire, American Civil Liberties Union Foundation Capital Punishment Project, Durham, North Carolina, Attorneys for *Amici Curiae*, the American Civil Liberties Union Foundation of Delaware and the American Civil Liberties Union Capital Punishment Project.

Elena C. Norman, Esquire, Kathaleen St. J. McCormick, Esquire, Nicholas J. Rohrer, Esquire, Young Conaway Stargatt & Taylor, LLP; Marc Bookman, Esquire, Atlantic Center for Capital Representation, Philadelphia, Pennsylvania, Attorneys for *Amicus Curiae*, the Atlantic Center for Capital Representation.

*PER CURIAM:*

The defendant below-appellant Derrick Powell is appealing the Superior Court's denial of his motion for postconviction relief.[1]  However, during the pendency of that appeal, Powell moved to vacate his death sentence based on the United States Supreme Court decision in *Hurst v. Florida*[2] and this Court's recent interpretation of that decision in *Rauf v. State*.[3]  The only issue addressed in this decision is Powell's motion to vacate his death sentence.

In *Rauf*, we held that, after *Hurst*, the capital sentencing procedures in Delaware's death penalty statute are unconstitutional because the statute improperly permitted the imposition of a death sentence based upon a judicial determination of the necessary findings that the Sixth Amendment requires a jury to make.[4]  Specifically, *Rauf* held that those necessary findings must be made by a unanimous jury and beyond a reasonable doubt.  *Rauf* also held that it was impossible to sever the constitutional infirmities in Delaware's capital sentencing procedures.

The question presented by Powell's motion is whether the holding in *Rauf* applies to a death sentence that was already final when *Rauf* was decided.  We have concluded that this Court's decision in *Rauf* applies retroactively to Powell's case.  Therefore, Powell's death sentence must be vacated and he must be sentenced to

---

[1] *See State v. Powell*, 2016 WL 3023740 (Del. Super. Ct. May 27, 2016).
[2] *Hurst v. Florida*, 136 S. Ct. 616 (2016).
[3] *Rauf v. State*, 145 A.3d 430 (Del. 2016).
[4] *Id.* at 434.

"imprisonment for the remainder of his natural life without benefit of probation or parole or any other reduction."[5]

## Procedural Background

In February 2011, a Superior Court jury found Powell guilty of First Degree Murder for recklessly causing the death of Officer Chad Spicer while in flight from an attempted robbery, four counts of Possession of a Firearm During the Commission of a Felony, Resisting Arrest with Force or Violence, Attempted Robbery in the First Degree, and Reckless Endangering in the First Degree. Following a penalty hearing, the jury unanimously found beyond a reasonable doubt the existence of two statutory aggravators and, by a vote of seven to five, found by a preponderance of the evidence that the aggravating factors outweighed the mitigating factors and recommended that a sentence of death be imposed. The trial judge found the existence of several non-statutory aggravating factors and by a preponderance of the evidence that all of the aggravating factors outweighed the mitigating factors and imposed a sentence of death.[6] On August 9, 2012, this Court affirmed Powell's convictions and death sentence.[7]

After this Court affirmed his convictions and death sentence, Powell filed a *pro se* motion for postconviction relief in the Superior Court. The court appointed

---

[5] 11 *Del. C.* § 4209(d)(2).
[6] *Powell v. State*, 49 A.3d 1090, 1096 (Del. 2012).
[7] *Id.* at 1105.

2

counsel, who filed an amended motion for postconviction relief on October 1, 2013. Over the next two years, the record was expanded to include attorney affidavits and an evidentiary hearing. On May 24, 2016, the Superior Court denied Powell postconviction relief.[8] Powell's appeal from the denial of his motion for postconviction relief is currently pending before this Court.

### *Hurst and Rauf*

On January 12, 2016, the United States Supreme Court issued its decision in *Hurst*, holding that Florida's death penalty statute was unconstitutional.[9] The Superior Court certified five questions to this Court in accordance with Delaware Supreme Court Rule 41.[10] This Court accepted the five questions certified by the Superior Court, but revised the questions to remove any reference to the Delaware Constitution. On August 2, 2016, after briefing and oral argument, this Court, sitting *en banc*, answered the revised certified questions. In *Rauf*, we concluded that the Delaware death penalty statute, 11 *Del. C.* § 4209, is unconstitutional under federal law.[11]

In *Rauf*, this Court did not address whether *Hurst* or *Rauf* should be applied retroactively to capital cases currently in various stages of collateral review.

---

[8] *State v. Powell*, 2016 WL 3023740 (Del. Super. May 24, 2016).
[9] *Hurst v. Florida*, 136 S. Ct. 616, 624 (2016).
[10] *State v. Rauf*, 2016 WL 320094 (Del. Super. Ct. Jan. 25, 2016).
[11] *Rauf v. State*, 145 A.3d 430, 434 (Del. 2016).

Consequently, Powell, whose case is before this Court on appellate review from the denial of postconviction relief, moved to vacate his death sentence. He argues that *Hurst* and *Rauf* should be retroactively applied to his case.

### *Retroactivity Rules*

The normal federal framework for determining whether a new rule applies to cases on collateral review is based upon the United States Supreme Court's plurality opinion in *Teague v. Lane*.[12] *Teague* held that, as a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."[13] Nevertheless, *Teague* and its progeny recognize two exceptions to the general bar on retroactivity. First, "[n]ew *substantive* rules generally apply retroactively."[14] Second, new "watershed rules of criminal procedure," which are procedural rules "implicating the fundamental fairness and accuracy of the criminal proceeding," will also have retroactive effect.[15]

In *Danforth v. Minnesota*,[16] the United States Supreme Court explained that "*Teague*'s general rule of nonretroactivity was an exercise of [its] power to interpret

---

[12] *Teague v. Lane*, 489 U.S. 288 (1989); *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016); *see also Penry v. Lynaugh*, 492 U.S. 302, 313 (1989) (affirming and applying *Teague* analysis in a capital case).
[13] *Teague*, 489 U.S. at 310.
[14] *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (emphasis in original); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 728 (2016); *Teague*, 489 U.S. at 307, 311.
[15] *Saffle v. Parks*, 494 U.S. 484, 495 (1990); *Teague*, 489 U.S. at 311.
[16] 552 U.S. 264 (2008).

the federal habeas statute" and "cannot be read as imposing a binding obligation on state courts."[17] Nevertheless, more than twenty-five years ago this Court recognized the *Teague* general rule of non-retroactivity and its two exceptions as persuasive authority for deciding whether new state and federal precedents are to be applied retroactively in Delaware postconviction proceedings.[18] In doing so, we noted that the federal *Teague* "new rule" doctrine was evolving and that State courts may grant postconviction "relief to a broader class of individuals than is required by *Teague*."[19] Therefore, we declined to adopt a formal static test for determining the meaning of a "new rule" for the purposes of deciding a Delaware postconviction proceeding.

> In *Danforth*, the Supreme Court stated:

> It is thus abundantly clear that the *Teague* rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings. It was intended to limit the authority of federal courts to overturn state convictions—not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions.[20]

Accordingly, the retroactivity issue that is presented by Powell's motion is a matter of Delaware law. In analyzing that issue we look to *Teague* and its progeny for

---

[17] *Id.* at 278–79.
[18] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[19] *Id.* at 779–80; *Danforth*, 552 U.S. at 282.
[20] *Danforth*, 552 U.S. at 280–81 (providing that the *Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed "nonretroactive" under *Teague*).

guidance.[21]  However, as the United States Supreme Court held in *Danforth*, the postconviction retroactivity remedy that a state court provides for "violations of the Federal Constitution is primarily a question of state law."[22]

### Rauf Applies Ring, Hurst, and Apprendi

We have concluded that the decision in *Rauf* falls within our interpretation of *Teague*'s second exception to non-retroactivity. The State's reliance on *Schriro v. Summerlin*'s[23] refusal to find *Ring v. Arizona*[24] retroactive is misplaced. In *Apprendi v. New Jersey*,[25] the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, *and proved beyond a reasonable doubt*."[26] In *Ring*, the United States Supreme Court extended *Apprendi* to find that "[c]apital defendants . . . are entitled to a jury [rather than a judicial] determination of any fact on which the legislature conditions an increase in their maximum punishment."[27]

---

[21] Although the *Teague* analysis is instructive, this Court is "free to give [Delaware] citizens the benefit of [the United States Supreme Court's] rule in any fashion that does not offend federal law." *Danforth v. Minnesota*, 552 U.S. 264, 280 (2008).

[22] *Id.* But in *Montgomery v. Louisiana*, the Supreme Court recognized that *Danforth* left open the question of whether *Teague* was binding on the states as a matter of constitutional law and held that "when a new substantive rule of constitutional law controls the outcome of the case, the Constitution requires state collateral review courts to give retroactive effect to that rule." 136 S. Ct. 718, 728, 729 (2016).

[23] 542 U.S. 348 (2004).

[24] 536 U.S. 584 (2002).

[25] 530 U.S. 466 (2000).

[26] *Id.* at 490.

[27] *Ring*, 536 U.S. at 588.

6

Ring's claim was "tightly delineated[.]  He contend[ed] only that the Sixth Amendment required jury findings on the aggravated circumstances asserted against him."[28]  Ring's claim did not implicate the Due Process Clause because "Arizona law already required aggravating factors to be proved *beyond a reasonable doubt and that aspect of Apprendi was not at issue.*"[29]  Indeed, the *Summerlin* Court took special notice in its first footnote that *Ring* did not address the *burden of proof.*[30]  Accordingly, *Summerlin* only addressed the misallocation of fact-finding responsibility (judge versus jury) and not, like *Rauf,* the applicable burden of proof.[31]

The Supreme Court began its opinion in *Hurst* by holding that "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.  A jury's mere recommendation is not enough."[32]  The Supreme Court also held, as it had in *Apprendi,* that the Sixth Amendment, in conjunction with the *Due Process Clause, "requires that each element of a crime be proved to a jury beyond a reasonable doubt."*[33]

*Ring* only implicated the Sixth Amendment right to a jury.  The same was true in *Hurst* because Florida also already required proof beyond a reasonable doubt.[34]

---

[28] *Id.* at 597 n.4.
[29] *Summerlin,* 542 U.S. at 351 n.1; *Ring,* 536 U.S. at 597.
[30] *Summerlin,* 542 U.S. at 351 n.1.
[31] *Id.*
[32] *Hurst,* 136 S. Ct. at 619.
[33] *Id.* at 621 (citing *Alleyne v. United States,* 133 S. Ct. 2151, 2156 (2013)) (emphasis added).
[34] *Id.*; *Rauf v. State,* 145 A.3d 430, 433–34 (Del. 2016).

7

When *Hurst* was remanded, the Florida Supreme Court summarized its law as follows:

> Thus, before a sentence of death may be considered by the trial court in Florida, the jury must find the existence of the aggravating factors *proven beyond a reasonable doubt*, that the aggravating factors are sufficient to impose death, and that the aggravating factors outweigh the mitigating circumstances. *These same requirements existed* in *Florida law when Hurst was sentenced in 2012*—although they were consigned to the trial judge to make.[35]

Thus, unlike *Rauf*, neither *Ring* nor *Hurst* involved a Due Process Clause violation caused by the unconstitutional use of a lower burden of proof. This significant distinction in *Ring* and *Hurst* is fatal to the State's reliance upon *Summerlin* and is dispositive of why the *Rauf* holding fits within *Teague*'s second exception to nonretroactivity.

The second exception to non-retroactivity in *Teague* held that a new procedural rule applies retroactively if it is a new "watershed rule of criminal procedure" (1) "implicit in the concept of ordered liberty," implicating "fundamental fairness," and (2) central to an accurate determination of innocence or guilt," such that its absence "creates an impermissibly large risk that the innocent will be convicted."[36] "In the context of a death sentence, where the matter is not one of

---

[35] *Hurst v. State*, 202 So.3d 40, 53 (Fla. 2016).
[36] *Summerlin*, 542 U.S. at 359 (Breyer, J., dissenting) (quoting *Teague v. Lane*, 489 U.S. 288, 311–13 (1989)) (internal quotation marks omitted).

8

'innocence or guilt,' the second criterion asks whether the new procedure is 'central to an accurate determination' that death is a legally appropriate punishment."[37]

### *Rauf Is Watershed Ruling*

Based upon *Hurst*, *Rauf* overruled our prior decision *Brice v. State*[38] and announced a new watershed procedural rule for capital proceedings that contributed to the reliability of the fact-finding process.[39] Thus, *Rauf* falls squarely within the second exception set forth in *Teague* requiring retroactive application of "new rules" of criminal procedure "without which the likelihood of an accurate [sentence] is seriously diminished."[40] We also note that *Teague*'s holding on the retroactivity of new rules of criminal procedure was based upon the opinion of Justice Harlan, who acknowledged that "some rules may have both procedural and substantive ramifications."[41]

The burden of proof is one of those rules that has both procedural and substantive ramifications.[42] Prior to our holding in *Rauf*, the burden of proof was governed by the lesser standard of a preponderance of the evidence set forth in

---

[37] *Id.* (Breyer, J. dissenting) (quoting *Teague*, 489 U.S. at 313).
[38] 815 A.2d 314 (Del. 2003) (upholding the Delaware death penalty statute after *Ring*).
[39] *See Saffle v. Parks*, 494 U.S. 484, 495 (1990).
[40] *Teague*, 489 U.S. at 313.
[41] *Mackey v. United States*, 401 U.S. 667, 692 n.7 (1971) (Harlan, J., concurring).
[42] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *see also, e.g., Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014) ("[T]he burden of proof is a 'substantive' aspect of a claim."); *Welch v. United States*, 136 S. Ct. 1257, 1264–65 (2016).

9

Delaware's death penalty statute.[43] *Rauf* recognized that, after *Apprendi*, substantive Due Process required the higher "beyond a reasonable doubt" burden of proof. As we observed in *Rauf*, "[t]here is no circumstance in which it is more critical that a jury act with the historically required confidence than when it is determining whether a defendant should live or die."[44]

### Rauf Applies Retroactively

The question of whether the new higher burden of proof standard recognized in *Rauf* is retroactive was decided by the United States Supreme Court more than forty years ago.[45] In *Ivan V. v. City of New York*,[46] the Supreme Court held that the new rule announced in *In re Winship*,[47] changing the burden of proof for fact-finding from the "preponderance of evidence" standard to a "beyond a reasonable doubt" standard, must be applied retroactively because that change implicated fact-finding reliability under the Due Process Clause. In *Winship*, the Court had held that juveniles must be afforded the benefit of the reasonable doubt standard when charged with an act that would be a crime if committed by an adult.

In *Ivan V.*, the Supreme Court concluded that the new rule articulated in *Winship* must be applied retroactively because the reasonable doubt standard is the

---

[43] 11 *Del. C.* § 4209(d)(1).
[44] *Rauf v. State*, 145 A.3d 430, 481 (Del. 2016).
[45] *Ivan V. v. City of New York*, 407 U.S. 203 (1972).
[46] 407 U.S. 203 (1972).
[47] 397 U.S. 358 (1970).

sort of requirement without which the truth-finding function of a criminal trial is substantially impaired:

> *Winship* expressly held that the reasonable-doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of criminal law."

* * * *

> [T]he major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function, and *Winship* is thus to be given complete retroactive effect.[48]

In *Winship*, the Supreme Court explained that a conviction based upon the civil preponderance standard would amount to "a lack of fundamental fairness."[49] Later, *Teague* incorporated the "fundamental fairness" language from *Ivan V.* into its watershed procedural rule exception to non-retroactivity.[50] In *Hankerson v. North Carolina*,[51] another pre-*Teague* decision, the United States Supreme Court observed "we have never deviated from the rule stated in *Ivan V.* that '[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule (is) given complete

---

[48] *Ivan V.*, 407 U.S. at 204–05.
[49] *Winship*, 397 U.S. at 363.
[50] *Teague v. Lane*, 489 U.S. 288, 312 (1989).
[51] 432 U.S. 233 (1977).

11

retroactive effect.'"[52] The change in the burden of proof in *Winship* that was ruled retroactive in *Ivan V.* is no different from the change in the burden of proof that occurred in *Rauf.*

### *Conclusion*

The decision in *Rauf* constitutes a new watershed procedural rule of criminal procedure that must be applied retroactively in Delaware, pursuant to our interpretation of *Teague*'s second exception to non-retroactivity. Accordingly, we hold that *Rauf* must be applied retroactively to Powell's case. Therefore, Powell's death sentence must be vacated and he must be sentenced to "imprisonment for the remainder of his natural life without benefit of probation or parole or any other reduction."[53]

This decision is consistent with two prior opinions when this Court held that the extant death penalty statutes were unconstitutional and vacated all death sentences. In 1973, following the United States Supreme Court decision in *Furman*,[54] this Court held that the existing Delaware death penalty statute was unconstitutional.[55] The three remaining prisoners on Delaware's death row at the time had their death sentences vacated and were resentenced to life imprisonment.

---

[52] 432 U.S. 233, 243–44 (1977) (quoting *Ivan V.*, 407 U.S. at 204).
[53] 11 *Del. C.* § 4209(d)(2).
[54] *Furman v. Georgia*, 408 U.S. 238 (1972).
[55] *See State v. Dickerson*, 298 A.2d 761 (Del. 1973).

Four years later, after the United States Supreme Court decision in *Woodson v. North Carolina*,[56] this Court held Delaware's mandatory death-sentencing statute was unconstitutional.[57] *State v. Spence* consolidated the cases of all nine prisoners that had been sentenced to death under the mandatory scheme.[58] We held that the death sentences of all nine should be vacated and each should be sentenced to life imprisonment without parole.[59]

---

[56] 428 U.S. 280 (1976).
[57] *See State v. Spence*, 367 A.2d 983, 986 (1976) (citing *Woodson*, 428 U.S. at 301, 303).
[58] *Id.* at 985.
[59] *Id.* at 989–90.