IN THE SUPREME COURT OF THE STATE OF DELAWARE

EMMETT TAYLOR, III,      §
     §     No. 215, 2017
    Defendant-Below,      §
    Appellant,      §     Court Below: Superior Court
     §     of the State of Delaware
    v.      §
     §     Cr. ID. No. 0708020057 (S)
STATE OF DELAWARE,      §
     §
    Plaintiff-Below,      §
    Appellee.      §

Submitted:   January 17, 2018
Decided:     January 31, 2018

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 31st day of January 2018, having considered the briefs and the record

below, it appears to the Court that:

(1) On August 17, 2007, the police arrested Emmett Taylor, III for the

murder of his fiancé, Stephanie Mumford. On October 30, 2009, a jury convicted

Taylor of first degree murder, possession of a deadly weapon during the commission

of a felony, and abuse of a corpse. He was sentenced to death. On September 10,

2012, Taylor filed his first motion for postconviction relief, alleging his counsel was

ineffective. The Superior Court denied the motion on November 23, 2015,[1] and this Court affirmed on June 28, 2016.[2]

(2) On April 3, 2017, after this Court declared Delaware's death penalty statute unconstitutional in *Rauf v. State*[3] and applied its decision retroactively in *Powell v. State*,[4] Taylor filed a motion to vacate his death sentence and a second motion for postconviction relief. The Superior Court granted the motion to vacate and resentenced him to life in prison without parole or reduction.[5] The court summarily dismissed his second motion for postconviction relief, finding he failed to raise new evidence creating a strong inference of actual innocence.[6] We affirm.

(3) On appeal, Taylor argues the Superior Court abused its discretion by holding that he did not present new evidence creating a strong inference of actual innocence, and that the court violated his constitutional rights by not considering a term of years under 11 *Del. C.* § 4205, sentencing him instead under 11 *Del. C.* § 4209(d)(2) to life in prison without parole or reduction. We review the Superior Court's denial of a motion for postconviction relief for an abuse of discretion.[7]

---

[1] *State v. Taylor*, 2015 WL 7753046 (Del. Super. Ct. Nov. 23, 2015), *aff'd*, 144 A.3d 1107 (Del. 2016), *reargument denied*, (Aug. 10, 2016).
[2] *Taylor*, 144 A.3d 1107.
[3] 145 A.3d 430 (Del. 2016).
[4] 153 A.3d 69 (Del. 2016).
[5] App. to Opening Br. at 2224–25 (Transcript of Proceedings, *State v. Taylor*, No. 0708020057, at 11–12 (Del. Super. Apr. 28, 2017) (TRANSCRIPT)).
[6] *Id.*
[7] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

(4) Before addressing the merits of Taylor's motion for postconviction relief, we first address the procedural bars.[8] Under Rule 61 of the Superior Court Rules of Criminal Procedure, a motion for postconviction relief is barred if it is untimely, repetitive, procedurally defaulted, or formerly adjudicated.[9] These bars do not apply, however, if the movant can satisfy the pleading requirements of Rule 61(d)(2).[10] Under Rule 61(d)(2), a second motion for postconviction relief "shall be summarily dismissed, unless the movant was convicted after a trial" and, relevant to this appeal, "(i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charged of which he was convicted."[11] To satisfy this standard, Taylor must show that the evidence (a) will probably change the result if a new trial is granted; (b) was discovered since the trial and could not have been discovered before by the exercise of due diligence; and (c) is not merely cumulative or impeaching.[12]

---

[8] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990) ("This Court applies the rules governing procedural requirements before giving consideration to the merits of the underlying claim for postconviction relief.").

[9] Super. Ct. Crim. R. 61(i)(1)–(4). We apply the version of Rule 61 in effect at the time the motion is filed. *Bradley v. State*, 135 A.3d 748, 757 (Del. 2016). Taylor filed his second motion for postconviction relief on April 3, 2017, thus the June 1, 2015 version applies.

[10] *Id.* 61(i)(5) ("The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply . . . to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.").

[11] *Id.* 61(d)(2)(i). If "it plainly appears . . . that the movant is not entitled to relief," the court may summarily dismiss the motion. *Id.* 61(d)(5).

[12] *Downes v. State*, 771 A.2d 289, 291 (Del. 2001).

(5) During trial, the Superior Court jury heard convincing evidence that Mumford died of blunt force trauma to the head when Taylor beat her with a frying pan and bashed her head into the drywall in the house. Taylor's "new evidence" is expert testimony that Mumford died from her impact with the drywall after falling down the stairs, that she was alive when he took explicit photos of her with his cellphone, and that his actions were explained by his background of trauma; and more general evidence that he called off the wedding, that Mumford had previously threatened others with a knife, and that she had an active bench warrant for possession of cocaine.

(6) Taylor first offers expert testimony that Mumford died from hitting her head on the drywall and not from the frying pan, and that she was alive when he took explicit photos of her using his cellphone. Taylor made these arguments in his first motion for postconviction relief.[13] The Superior Court rejected the claims, and we agree with its reasoning. The court found the evidence was irrelevant,[14] and that the prosecutor "made it clear it was not just the frying pan" that caused Mumford's

---

[13] *Taylor*, 2015 WL 7753046, at *4–5 ("Taylor argues that his Trial Counsel were ineffective because: . . . 4. They did not retain a forensic pathologist to determine the cause and manner of Mumford's death. . . . . 6. They did not retain experts who would testify that Mumford sustained a fatal head injury when her head crashed into the wall at the base of the stairway and that the frying pan was not the murder weapon, which prevented them from being able to negotiate a plea to something less than Murder in the First Degree.").

[14] *Id.* at *33 (finding the expert's opinion about the cause of death "is irrelevant because (1) it is largely consistent with the State's theory as to Mumford's cause of death, and (2) rests entirely on Taylor's testimony").

4

death, but "could have involved Taylor's fists, the frying pan, the drywall and anything else that could cause blunt force trauma."[15] The court also found the testimony that Mumford was alive in the photos not credible based on her positioning, the fact the photos did not show her face, and the illogical assumption that she would consent to sexual activity after the fight and while gravely injured.[16] Thus, Taylor's evidence is not "new" because it was considered in his earlier motion, and, in any event, does not lead to a strong inference that he was actually innocent.[17]

(7) Taylor next relies on expert testimony that his response to Mumford's attack, subsequent flight, and gaps in his police statement were "consistent with his significant background of trauma and not evidence of guilt."[18] As the Superior Court noted in Taylor's first motion for postconviction relief, Taylor decided not to assert

---

[15] *Id.* at *23.

[16] *Id.* at *34; *see also id.* at *12 ("[N]o one would have believed that Mumford would have wanted to have sex with Taylor after the fight in the kitchen and the 'fall' down the stairway."); *id.* at *36 ("The trouble with Taylor's argument is that it is based on his testimony and is premised on his belief that the State would have found his testimony more credible if he had experts who would have been willing to testify at his trial that Mumford sustained a fatal head injury when her head crashed into the wall at the base of the stairway and that the frying pan was not the murder weapon. Every part of Taylor's argument is flawed.").

[17] *Id.* at *35 (explaining that even though trial counsel did not specifically retain a forensic expert to investigate the "cause and manner of Mumford's death," this "did not unfairly prejudice Taylor's right to a fair trial"); *id.* at *36 ("Taylor's story was that after Mumford took a beating in the kitchen and 'fell' down the stairway that she became aroused and wanted to have sex with him. That story was just not credible. The State had a very strong case against Taylor . . . . Taylor's experts would not have changed anything.").

[18] Opening Br. at 14.

a mental health defense, arguing self-defense instead.[19]   In a case involving a different defendant named Taylor, this Court rejected an argument that the defendant's trial counsel "failed to investigate adequately [his] personal background [and] failed to present a mental health defense" when the defendant had rebuffed his counsel's attempts to do so before trial.[20]   The Court found the defendant and his counsel "merely had a difference of opinion over what course was in [the defendant's] best interest," and his counsel made an objectively reasonable investigation.[21]   Here, Taylor's counsel adequately investigated Taylor's mental health, but Taylor insisted on pursuing a self-defense strategy.[22]   Regardless, Taylor's background of trauma does not create a strong inference of actual innocence.[23]

(8)     Lastly, Taylor presents evidence that he called off the wedding, that Mumford had previously threatened others with a knife, and that she had an active

---

[19] *Taylor*, 2015 WL 7753046, at *14 ("Taylor was initially on board with [a mental health] defense, but ultimately decided to pursue a trial strategy of self-defense and accidental fall . . . ."). In fact, in Taylor's first motion for postconviction relief, Taylor argued that his counsel was "so focused on preparing a mental illness defense based on Dissociative Identity Disorder over Taylor's objection that it precluded them from preparing for his chosen trial strategy of self-defense and accidental fall." *Id.* at *5.

[20] *Taylor v. State*, 32 A.3d 374, 379 (Del. 2011).

[21] *Id.* at 385.

[22] *Taylor*, 2015 WL 7753046, at *37.

[23] *Id.* at *33; *id.* at *38 ("Taylor's own words buried his trial strategy, not his Trial Counsel's alleged failure to thoroughly prepare for and vigorously pursue it. I conclude that Taylor's Trial Counsel did thoroughly prepare for and vigorously pursue his chosen trial strategy.").

bench warrant in Maryland for possession of cocaine.[24]  The argument that Mumford had threatened others with a knife, and that she was motivated to attack him because he called off the wedding, does not create a strong inference of actual innocence. Even if Mumford attacked Taylor, Taylor stated that he disarmed her, which would have ended his need for self-defense.[25]  In his statements to the police, the detective stated "that it was a one-sided fight right or wrong," and Taylor agreed, responding "of course you're right."[26]  Further, the warrant for possession of cocaine would have been inadmissible to show a tendency toward violence.[27]  This evidence is irrelevant to Taylor's defense that Mumford died from accidentally falling down the stairs, and is insufficient to create a strong inference of actual innocence.[28]

(9)  Second, Taylor argues the Superior Court violated his constitutional rights because it did not consider a term of years upon resentencing.  Taylor asserts

---

[24] Opening Br. at 15.

[25] *Taylor*, 2015 WL 7753046, at *3.

[26] *Id.* at *27.

[27] *State v. Smith*, 2012 WL 2914194, at *4 (Del. Super. Ct. July 17, 2012) ("[T]he Defendant seeks to admit evidence that he observed the victim purchase crack cocaine and that 'crackheads' are violent.  This evidence is also inadmissible . . . .").

[28] The evidence against Taylor outweighs any potential mitigation offered by these defenses. *See*, *e.g.*, *Taylor*, 2015 WL 7753046, at *8 (explaining the photos and his subsequent flight from the crime scene "is powerful evidence of his consciousness of guilt and undermines his trial strategy of self-defense and accidental fall"); *id.* at *27 ("The jury obviously concluded that Taylor fabricated the story about he and Mumford falling down the stairway . . . ."); *id.* at *31 ("[Taylor] did not mention Mumford's 'accidental fall' down the stairway.  Instead, he mentioned a struggle and a fight, which Taylor described as a one-sided fight. Taylor's own words are the words of a guilty man."); *id.* at *33 ("The jury simply did not believe that Mumford, after being hit by Taylor with the frying pan and engaging in a violent fight in the kitchen, jumped on his back to keep him from leaving the townhouse, causing them both to accidently fall down the stairway.").

that 11 *Del. C.* § 4209 is unconstitutional in its entirety and therefore the court should have sentenced him according to 11 *Del. C.* § 4205. We rejected this argument in *Norcross v. State*.[29] Thus, Taylor's second argument is without merit.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[29] 2018 WL 266826, at *1 n.3 (Del. Jan. 2, 2018) (TABLE) ("The answer to Question Five in the *per curiam* opinion in *Rauf* applied to severability of the procedures leading to the death penalty. It had no effect upon 11 *Del. C.* § 4209(d)(2).") (citing *Powell*, 153 A.3d 69; *Phillips v. State*, 154 A.3d 1130 (Del. 2017); *State v. Reyes*, 155 A.3d 331 (Del. 2017)). Section 4209(d)(2) provides: "Otherwise, the Court shall impose a sentence of imprisonment for the remainder of the defendant's natural life without benefit of probation or parole or any other reduction."