# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. # 0003016874 |
| | ) | |
| MILTON TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 23, 2018
Decided: June 28, 2018

**Upon Taylor's Second Motion for Postconviction Relief: DENIED**

## **OPINION**

Herbert Mondros, Esquire, of MARGOLIS EDELSTEIN, Wilmington, Delaware, Attorney for Milton Taylor.

Elizabeth R. McFarlan, Esquire, and Maria T. Knoll, Esquire, of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorneys for the State.

**LeGrow, J.**

In his amended second motion for postconviction relief (the "Motion") under Superior Court Criminal Rule 61, Defendant raises myriad claims that (1) already were raised in his earlier proceedings before this Court and the Delaware Supreme Court, and/or (2) could have been raised in earlier proceedings, but were not. Defendant acknowledges most of those claims procedurally are barred under the version of Rule 61 that was in effect at the time he first filed his second postconviction motion, but he argues—against binding Delaware Supreme Court authority—that that version of the rule does not apply in this case. Defendant alternatively argues he overcomes the procedural bars in the amended rule by presenting claims of actual innocence.

Defendant's motion procedurally is barred by Rule 61 and established Delaware Supreme Court precedent. His Motion, however, requires this Court to consider, in an apparent issue of first impression in this state, whether a claim of actual innocence under Rule 61 may include a claim that new evidence negates the state of mind required to convict a defendant of the crime at issue. I conclude actual innocence does not include evidence negating a defendant's intent to commit a crime, and that Taylor's "new evidence" therefore does not satisfy the actual innocence exception to Rule 61's procedural bars. Accordingly, Taylor's Motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of March 23, 2000, a maintenance worker at the Compton Townhouse complex in Wilmington discovered Theresa Williams' body bloody, badly beaten, and concealed in a blanket with a cord wrapped around her neck. The police identified Milton Taylor as a suspect upon learning Taylor previously had a relationship with Williams and had been seen in the vicinity of Williams' apartment on the morning Williams' body was discovered.

On March 25, 2000, the police arrested Taylor at a payphone in downtown Wilmington. During the routine inventory procedure at the police station, Officer Ronald Muniz discovered a folded piece of paper in Taylor's clothes that later was revealed to be Taylor's written confession to murdering Williams (the "confession letter"). An investigation revealed Taylor previously had a relationship with Williams, but had become involved with a new girlfriend. Taylor's new girlfriend threatened to leave him unless he ended contact with Williams. When Taylor visited Williams to end contact with her, he strangled her to death.

On March 31, 2001, the jury convicted Taylor of first degree murder. At the penalty phase, the jury recommended the death penalty by a vote of 10 to 2, and the judge sentenced Taylor to death. In 2003, the Delaware Supreme Court affirmed Taylor's conviction, and the United States Supreme Court denied his petition for writ of certiorari.

2

In March 2006, Taylor filed his first motion for postconviction relief. In September 2009, Taylor filed his amended first motion for postconviction relief. In August 2010, the Court denied his motion after multiple depositions and filings. In November 2014, Taylor filed his second motion for postconviction relief, but the trial judge refused the filing on the basis that Taylor's habeas corpus petition, which then was pending in federal district court, left this Court without jurisdiction to consider postconviction relief. Taylor ultimately filed a writ of mandamus petition with the Delaware Supreme Court, and that Court directed this Court to vacate its order and accept a postconviction motion from Taylor. This Court then vacated its order refusing to docket Taylor's second postconviction motion.[1]

On September 9, 2016, at Taylor's request, the Court stayed Taylor's motion pending the Delaware Supreme Court's decision in *Powell v. State*.[2] The decision in *Powell*, issued December 15, 2016, retroactively declared Delaware's capital sentencing structure unconstitutional. In April 2017, the Court vacated Taylor's death sentence and resentenced him to life-imprisonment without probation or parole. On August 25, 2017, Taylor filed his amended second motion for postconviction relief (the "Motion").

In support of his Motion, Taylor argues the Court should apply the pre-2014 version of Rule 61 because Taylor's first postconviction petition was filed before

---

[1] D.I. 260.
[2] 153 A.3d 69 (Del. 2016).

the June 4, 2014, amendments to Rule 61.  Taylor then raises multiple claims for relief from his conviction.  First, Taylor argues his trial counsel rendered ineffective assistance by failing to: (i) retain a forensic pathologist to rebut the state medical examiner's trial testimony; (ii) present a defense of extreme emotional distress; (iii) object to admission into evidence of the fact of Williams' pregnancy at the time of her death; (iv) correctly litigate the suppression of Taylor's confession letter; (v) object to the death qualification of the jury; and (vi) object to prosecutorial misconduct during Taylor's trial.

Second, Taylor argues the death qualification process and alleged jury tainting violated his right to a fair and impartial jury.  Third, Taylor contends prosecutorial misconduct rendered his trial fundamentally unfair because the prosecution called Williams' sister to testify.  Fourth, Taylor argues the above claims violated his due process rights.  Fifth, Taylor argues appellate counsel rendered ineffective assistance by failing to make the above arguments during Taylor's various appeals.  Finally, Taylor argues he is entitled to a new trial based on the prejudicial effects of the alleged cumulative errors mentioned above.

## ANALYSIS

### A. Amended Rule 61 applies to Taylor's Motion.

The State argues Taylor's Motion procedurally is barred under the version of Rule 61 in effect at the time he filed his Motion ("amended Rule 61").  Taylor

challenges on multiple grounds amended Rule 61's applicability to his Motion. First, Taylor argues the pre-2014 version of Rule 61 applies to his Motion because his first motion for postconviction relief was filed on September 30, 2009, before Rule 61's 2014 amendments. Taylor argues applying amended Rule 61 would violate the due process and fair notice requirements of the Delaware and United States Constitutions that prohibit a state from applying a rule that was announced after a petitioner's "alleged default."[3] Second, Taylor argues applying amended Rule 61 to his Motion would abridge his rights under the Delaware Supreme Court's decision in *Guy v. State*,[4] which, according to Taylor, entitles petitioners to raise an initial ineffective assistance of post-conviction counsel claim.

Third, Taylor argues amended Rule 61 limits his habeas corpus right under common law and the Suspension Clauses of the Delaware and United States Constitutions. Fourth, Taylor argues review of his Motion is required in the interest of justice and to prevent a miscarriage of justice under the pre-2014 version of Rule 61. Taylor contends review of his Motion is required to prevent a miscarriage of justice because it contains "colorable claims" that undermine the reliability of his conviction. Taylor also asserts a review of his Motion is required

---

[3] Mot. Postconviction Relief v. In an apparent bid to overcome the page limitations applicable to his Motion, Taylor placed his procedural arguments in a separate, "introductory" section that was numbered with Roman numerals. This is gamesmanship in its purest form and not condoned or excused by this Court, particularly since this Court previously expressly denied Taylor's request for a higher page limit. Should counsel attempt something similar in this or any other case before this Court, he will be sanctioned and/or referred to disciplinary counsel.
[4] 82 A.3d 710 (Del. 2013).

5

in the interest of justice because new evidence allegedly undermines his conviction. In the alternative, Taylor argues his Motion overcomes the procedural bars under amended Rule 61 because the Motion presents new evidence that Taylor actually is innocent of the charges that led to his conviction.

The order amending Rule 61 provides "This amendment shall be effective on June 4, 2014 and shall apply to postconviction motions filed on or after that date."[5] The Delaware Supreme Court has upheld application of amended Rule 61 to motions filed even shortly after the rule's amendment.[6] Taylor argues applying amended Rule 61 would violate the notice requirements discussed in the Third Circuit's decision in *Fahy v. Horn*[7] because amended Rule 61 was not in place at the time of Taylor's alleged default. In *Fahy*, the Third Circuit held:

> Procedural default occurs when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been firmly established and regularly followed.[8]

The federal requirement is designed to (1) ensure that a habeas petitioner is on notice of how to follow the state procedural rules when filing his petition; and (2)

---

[5] *See* Order Amending Super. Ct. Crim. R. 61.

[6] *See, e.g.*, *Cannon v. State*, 127 A.3d 1164 (Del. 2015) (applying amended Rule 61 to a motion filed merely six months after Rule 61 was amended).

[7] 516 F.3d 169 (3d Cir. 2008) (holding Pennsylvania procedural rules could not bar federal review of the state court's decision because the rules were not firmly established at the time of the prisoner's default).

[8] *Id.* at 187.

prevent discrimination by means of inconsistently-applied procedural rules through whim or prejudice against a claimant. "[W]hether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on [the rule], because a petitioner is entitled to notice of how to present a claim in state court."[9]

Here, a procedural default claim is unripe because Taylor is not asking a federal court to review a state court's decision that Taylor's Motion was barred on procedural grounds. Further, Taylor cannot be said to have defaulted until this Court finds his Motion procedurally is barred. Because I find that Taylor's Motion is barred, however, I will address the procedural default claim for the sake of a complete record and efficient judicial review.

Taylor's procedural default claim does not meet the federal requirements under *Fahy*. Amended Rule 61 was firmly established by the date Taylor submitted his Motion in August 2017, which is the date a federal court would use to determine whether a default occurred.[10] Although Taylor filed his first amended motion in September 2009, his current Motion was filed in August 2017, more than

---

[9] *Id.* at 188.

[10] Taylor appears to argue that the "default" occurred at the time of the alleged error, or at the latest at the time his first motion for postconviction relief was filed. He cites no authority for this proposition, and the argument does not withstand even the barest scrutiny. Taylor "defaulted" at the time he filed the motion that failed to comply with the rule.

three years after Rule 61 was amended.[11]  Taylor therefore was on notice for more than three years how to follow amended Rule 61's procedural rules.  Additionally, Delaware courts consistently have applied amended Rule 61 in reviewing postconviction motions filed over the past four years.  Accordingly, Taylor's notice requirements under *Fahy* were satisfied.

Second, Taylor argues amended Rule 61 cannot abridge his right to raise an initial ineffective assistance of postconviction counsel claim under *Guy*.  In *Guy*, the Delaware Supreme Court held a defendant may pursue a claim of ineffective assistance of postconviction counsel up to one year after the defendant's initial motion for postconviction relief is concluded.[12]  *Guy*, however, was decided before Rule 61 was amended in 2014.  Amended Rule 61 includes procedural requirements that all motions for postconviction relief must meet notwithstanding the decision in *Guy*.  In *Durham v. State*,[13] the Delaware Supreme Court noted Rule 61's limitation of the *Guy* decision in view of the 2014 amendments.

> In June 2014, Rule 61 was substantially amended with the adoption, among other things, of a new pleading standard for second or subsequent motions for

---

[11] Even if the Court applies the November 2014 date on which Taylor first attempted to file his second motion for postconviction relief, that motion still was filed several months after the amendments to Rule 61 took effect.

[12] *Guy v. State*, 82 A.3d 710, 715 (Del. 2013) ("[W]e conclude that fairness requires that the one-year time limitation on a claim of ineffective assistance of postconviction counsel shall begin to run when the defendant's appeal to this Court from the Superior Court's denial of his first motion for postconviction relief is concluded or, if no appeal was taken, within 30 days following the Superior Court's denial of the defendant's first motion for postconviction relief.").

[13] 173 A.3d 1061 (Table) (Del. 2017).

8

postconviction relief. The new pleading standard—found in Rule 61(d)(2) and incorporated in Rule 61(i)(2) and (i)(5)—provides that any second or subsequent postconviction motion will be summarily dismissed unless the movant was convicted after a trial and the motion either: (i) pleads with particularity that new evidence exists to establish the movant's actual innocence in fact; or (ii) pleads with particularity that a new, retroactively applicable constitutional rule applies to the movant's case and renders a conviction or death sentence invalid. Rule 61(d)(2), and the other amendments to Rule 61 in June 2014, were made effective on June 4, 2014[,] and apply to motions for postconviction relief filed on or after that date, including Durham's motion filed in February 2017.

Durham argues that, because the claims raised in his second postconviction motion consisted entirely of claims of ineffective assistance of postconviction counsel, the claims should have been considered on their merits under *Guy v. State* because Durham had no prior opportunity to raise the claims, and he raised the claims in a timely fashion. But Durham's argument disregards the pleading requirements now in effect under Rule 61(d)(2). The Superior Court was required to consider the procedural requirements of Rule 61(d)(2) before addressing any of the substantive issues raised in his second postconviction motion.[14]

Under amended Rule 61, therefore, this Court cannot consider the substantive issues raised in Taylor's Motion if it fails to overcome amended Rule 61's procedural bars.

Third, Taylor argues amended Rule 61 suspends Taylor's habeas corpus rights and thereby violates the Delaware Constitution. Taylor argues amended

---

[14] *Id.* (citations omitted).

Rule 61 improperly limits the relief provided in the pre-2014 version of the rule, namely a petitioner's right to bring renewed applications for postconviction relief if consideration of the claim is warranted in the interest of justice or to prevent a miscarriage of justice.

Taylor's argument previously was rejected by the United States Supreme Court. Title 28, Section 2244(b) of the United States Code contains a provision similar to amended Rule 61. Section 2244(b) provides, in relevant part:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[15]

---

[15] 28 U.S.C. § 2244(b) (2016).

In *Felker v. Turpin*,[16] the United States Supreme Court held Section 2244(b) does not act as an unconstitutional suspension of the right to habeas corpus. Rather, the Court found Section 2244 codified common law limits on successive petitions.

> The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice "abuse of the writ." In *McCleskey v. Zant*, we said that "the doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." The added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a "suspension" of the writ contrary to Article I, § 9.[17]

The Supreme Court therefore concluded that the federal statute's limitation on renewed applications for postconviction relief does not violate the United States Constitution's Suspension Clause.

The Delaware Supreme Court rejected a similar constitutional challenge to amended Rule 61 in Turnage *v. State*.[18] In *Turnage*, the petitioner claimed amended Rule 61 placed unconstitutional restrictions on her right to access the courts, violated due process, and impermissively was retroactive. The Supreme Court held:

> [] Turnage's argument that the amended Rule 61 denies her due process of law and meaningful access to the courts is without merit. The United States Supreme

---

[16] 518 U.S. 651 (1996).

[17] *Id.* at 664 (citations omitted).

[18] 127 A.3d 396 (Table) (Del. 2015) (alteration in the original).

11

Court has held that "[s]tates have no obligation to provide [postconviction] relief." Thus, Turnage is arguing about the extent to which the State has afforded a right to postconviction relief that it does not have to afford at all. Therefore, the amended Rule 61 provides more due process and access to the courts than is constitutionally required. Moreover, the amended form of Rule 61 still provides a broad right to file a first petition within "one year after the judgment or conviction is final," and even allows successive petitions in the compelling circumstance when a person "pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent" or "that a new rule of constitutional law, made retroactive to cases on collateral review . . . , applies to the movant's case." Turnage is not deprived of meaningful access to the courts just because she cannot collaterally attack a beneficial guilty plea more than a year after her conviction became final.[19]

As in Turnage, amended Rule 61 affords Taylor more due process than the United States Constitution requires and accordingly does not act as a suspension of Taylor's habeas corpus rights.

In sum, the Delaware Supreme Court has held amended Rule 61 applies to all motions filed after June 4, 2014. Applying amended Rule 61 does not violate Taylor's fair notice rights because the amended rule was well-established and regularly used by the time Taylor filed his Motion. Further, as the Delaware Supreme Court recognized in *Durham*, amended Rule 61 limits the ruling in *Guy* by imposing additional procedural bars that apply to Taylor's Motion. Finally, the

---

[19] *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); Super. Ct. Crim. R. 61 (2014)).

amended rule does not abridge Taylor's federal habeas rights as the rule affords more habeas protection than is required by the United States Constitution. Accordingly, amended Rule 61's procedural bars apply to Taylor's Motion.

**B. Taylor's claims procedurally are barred.**

This Court now must consider whether amended Rule 61's procedural bars apply to some or all of Taylor's postconviction claims. If the claims are barred procedurally, this Court does not consider their merits.[20] Because Taylor's Motion is his second request for postconviction relief, Taylor must overcome amended Rule 61's bar for second or subsequent motions. That rule provides:

> A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion . . . pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted . . . .[21]

Taylor argues his Motion overcomes Rule 61's procedural bars because it presents new evidence that proves Taylor actually is innocent of the "acts underlying the charge of which he was convicted."[22] Taylor's Motion raises several arguments including ineffective assistance of trial counsel, deprivation of a fair and impartial jury, prosecutorial misconduct during Taylor's trial, violation of due process, ineffective assistance of postconviction counsel, and a request for a

---

[20] *See Kiser v. State*, 925 A.2d 504 (Del. 2007); *State v. Wingate*, 2004 WL 772335 (Del. Super. March 15, 2004).
[21] Super. Ct. Crim. R. 61.
[22] Mot. Postconviction Relief xii-xiii.

13

new trial. The only new evidence presented in Taylor's Motion, however, is a new independent forensic pathologist report and a forensic psychologist report. Accordingly, all other arguments procedurally are barred as they fail to present new evidence that create a strong inference that Taylor actually is innocent of the acts underlying the charges of which he was convicted.[23]

Taylor argues his Motion presents two new pieces of evidence that demonstrate he actually is innocent of the charges leading to his conviction. First, Taylor presents an affidavit by Dr. Charles Wetli, a medical examiner and forensic pathologist who, according to Taylor, rebuts the trial testimony of the State's medical examiner, Dr. Sekula-Perlman. Second, Taylor presents a report by Dr. Victoria Reynolds, a forensic psychologist, who details the effects of Taylor's traumatic childhood on his ability to self-modulate his behavior. Taylor argues both these reports present new evidence that Taylor lacked the requisite intent to be convicted of First Degree Murder. In other words, Taylor contends "actual innocence" under Rule 61(d)(2) includes evidence that a defendant did not have the necessary state of mind to be convicted of a particular offense.

The Delaware Supreme Court has stated that the "actual innocence" exception to Rule 61's procedural bars requires new evidence creating a "strong

---

[23] Taylor acknowledges that, if amended Rule 61 applies, all his claims are barred except claims IA (Trial counsel's failure to retain a forensic pathologist to rebut the testimony of the state medical examiner regarding time and cause of William's death), IB (Trial counsel's failure to raise a defense of extreme emotional distress), and IV. *See* Def.'s Reply Br. at 6-7.

14

inference that the defendant was actually innocent of the underlying charges."[24] Taylor's argument, however, requires this Court to determine, apparently for the first time, whether Rule 61's actual innocence exception includes innocence of intent. Although Delaware courts have not considered this issue previously, federal courts have addressed similar claims under Section 2244(b), the federal analog to Rule 61, and those courts do not consider evidence negating intent as meeting the actual innocence exception.

The Tenth Circuit considered this issue in *Long v. Peterson*.[25] In *Long*, an Oklahoma state court convicted the petitioner of First Degree Malice Aforethought Murder after the petitioner stabbed his adopted father to death.[26] In a petition for writ of habeas corpus in federal court, the petitioner argued he actually was innocent of first degree murder "even though he did cause the death of another person."[27] The petitioner claimed he only intended to hurt his adoptive father, not kill him, and therefore he lacked the requisite intent to commit murder.[28] In support of his argument, the petitioner offered evidence from two psychologists who testified the petitioner's "stunted emotional development" and "inability to

---

[24] *Winn v. State*, 129 A.3d 882 (Table) (Del. 2015).
[25] 291 Fed. Appx. 209 (10th Cir. 2008).
[26] *Id.* at 210.
[27] *Id.* at 211.
[28] *Id.*

understand the consequences of his actions" affected the commission of the offense.[29]

The Tenth Circuit rejected petitioner's argument, holding that "actual innocence means factual innocence, not legal innocence."[30] "Because [petitioner] admits his actions caused his father's death, he is not factually innocent."[31] The Tenth Circuit therefore excluded innocence of intent from the actual innocence exception to Section 2244. Proving actual innocence requires more than innocence of intent; it requires new evidence that a person other than the petitioner committed the crime. The United States Supreme Court explained the meaning of actual innocence in *Sawyer v. Whitley*,[32] where the Court noted:

> A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime. Such claims are of course regularly made on motions for new trial after conviction in both state and federal courts, and quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions. But in rare instances it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the law has made a mistake.[33]

---

[29] *Id.* at 213.
[30] *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).
[31] *Id.*
[32] 505 U.S. 333 (1992).
[33] *Id.* at 340-41.

Accordingly, a petitioner who argues only that he lacked the requisite intent to commit a crime fails to establish a strong inference of actual innocence under amended Rule 61.[34]

Here, the two forensic reports in Taylor's Motion allegedly discuss issues surrounding Taylor's intent to kill Williams. The Wetli report contends that some of Williams' wounds were suffered after Taylor strangled her. The Reynolds report concluded Taylor demonstrated a failure to self-modulate his behavior due to his traumatic childhood. From these conclusions, Taylor reaches to argue the reports show new evidence that he actually is innocent of murder because he was innocent of the intent to kill Williams. Taylor, however, offers no evidence that he is factually innocent of Williams' murder. Indeed, Taylor's confession letter stated "I confess I did kill Treety . . . . After I strangled her I stuck a long kitchen knife

---

[34] *See also Warren v. Jackson*, 2013 WL 1812202, *2 (E.D. Mich. April 30, 2013) ("Moreover, even under Petitioner's interpretation of the facts, Petitioner alleges at most that he was convicted on the basis of legally insufficient evidence because he lacked the necessary intent to be found guilty. He has not demonstrated that he is factually innocent, and, to establish 'actual innocence,' one must show 'factual innocence, not mere legal insufficiency.'") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *Bell v. Miller*, 2009 WL 920509, *8 (N.D. Okla. April 2, 2009) ("In this case, Petitioner claims that he lacked the requisite intent to kill the victim. To the extent he claims to be innocent based on his lack of intent, the claim is one of legal innocence as opposed to actual or factual innocence and does not satisfy the fundamental miscarriage of justice exception. Therefore, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case."); *Davis v. McNiel*, 2008 WL 3540306, *12 (N.D. Fla. Aug. 12, 2008) ("In considering whether Petitioner has made a colorable showing of actual innocence, the undersigned notes Petitioner's admission in his reply brief that he was involved in a "scuffle" with the victim and his contention that he lacked criminal intent and was acting in self defense[]. A claim of lack of criminal intent is a claim of legal insufficiency, not factual innocence, and does not satisfy the "actual innocence" exception to the procedural bar.").

down her mouth and cut something in her throat."[35]  As in *Long*, Taylor's argument of innocence of intent fails to meet Rule 61's actual innocence standard. Accordingly, the remainder of Taylor's arguments procedurally are barred under Rule 61(d)(2).

## CONCLUSION

For all the foregoing reasons, Taylor's Motion for Postconviction Relief is **DENIED**.  **IT IS SO ORDERED.**

---

[35] *Taylor v. State*, 822 A.2d 1052, 1054 n.5 (Del. 2003).